**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

*vs.*                                                                    **CRIMINAL ACTION NO.  2:13cr30**

**RONNIE GERALD BELT,**

**Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned for consideration of Defendant, Ronnie Gerald Belt's

"Motion to Suppress Evidence" and "Motion to Suppress Evidence Pursuant to 'Franks v.

Delaware'" [D.E. 18 and 19, respectively] both filed on October 9, 2013.  The United States filed its

Objections to the Motions on October 22, 2013 [D.E. 22 and 23].   On October 23, 2013, came

Defendant Belt in person and by counsel, Brian J. Kornbrath,  and the United States by its Assistant

United States Attorney, Stephen Warner, for hearing on the motions.

During the hearing issues were raised that had not been raised in the briefings.  One issue was

that the affiant may have had a recorded conversation with the magistrate who issued the search

warrant, which recording was not produced.  The other issue was whether the police legally entered

Defendant's home when they apparently entered on the consent or invitation of Defendant's 11 year-

old son.   The Court continued the hearing to allow the parties to further investigate these issues.

Defendant, through counsel, filed a Supplemental Motion to Suppress on October 28, 2013 [D.E. 27].

Came Defendant in person and via counsel, Brian Kornbrath, and came the United States via

AUSA Stephen Warner on November 6, 2013, for continuation of the hearing.

## I.  Procedural History

Defendant Ronnie Gerald Belt was indicted by a grand jury attending the United States

District Court for the Northern District of West Virginia on August 27, 2013 [D.E. 1].   The Two-

Count Indictment charges Defendant with Maintaining Drug-Involved Premises and Possession of Material used in the Manufacture of Methamphetamine.

## II. The Contentions

Defendant contends the search of his residence was illegal and unconstitutional in that:

1.  The search warrant application failed to establish probable cause;

2.  The good faith exception to the exclusionary rule does not apply as the affidavit in support of the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

3.  The entry by police on the invitation or consent of Defendant's 11-year-old son was illegal.

Defendant further requests a <u>Franks</u> hearing, asserting that the police misrepresented certain facts in the affidavit in support of the search warrant.

The Government contends:

1.  The totality of the information contained in the search warrant, in light of reasonable conclusions, supports the magistrate's probable cause finding;

2.  "In the context of the conversation and geographic location, the officers should at a minimum not be punished under Exclusionary Rule for their good faith and reasonable conclusion."

The Government further objects to a <u>Franks</u> hearing, noting that the statement at issue obviously was not made after the search warrant was executed, because the statement is in the search warrant.

## III. The Search Warrant Affidavit

The facts in support of the search warrant are as follows:

On April 3, 2013, Sgt. G.E. Dornburg and Troopers S. C. Baier and S. G. Blake of the WV State Police went to the residence of Ronnie Belt, which is described herein

above, to speak with Ronnie Belt about an anonymous tip they had received that he was cooking methamphetamine in the residence. Upon speaking with Ronnie Belt the officers explained why they were there and asked for consent to search the residence. Mr. Belt decline to give consent (con't on next page)

. . . .

The officers asked Mr. Belt if there was something in the residence he was concerned about. Mr. Belt responded that there were two jars in the residence that "may have been used for something" and that the officers would need to obtain a search warrant. The officers sealed the residence and sought the search warrant.

## IV. Testimony and Evidence

The Court heard the testimony of West Virginia State Police Sgt. G.E. Dornburg, Trooper S. G. Blake, and Webster County Magistrate Richard S. Robertson for the Government. The Court also admitted the search warrant and the affidavit in support, as well as the recording of the proceeding in which Trooper Blake applied for the search warrant from Magistrate Robertson.

Sgt. Dornburg testified he was not clandestine lab certified, but was experienced in investigating methamphetamine labs. He had "a couple years" experience with meth labs, having been involved in about a dozen cases. Manufacture of methamphetamine is "prevalent" in Webster County, and meth is the predominant drug there.

Sgt. Dornburg testified he received an anonymous phone call in April from a female informing him that methamphetamine was being produced or used at Defendant's residence. He, Trooper Blake and Trooper S. C. Baier went to Defendant's residence to speak with him and attempt to obtain his consent to search. Sgt. Dornburg referred to this as a "knock and talk." They went within one hour of the anonymous call. They had no other reason to go. Three officers went as a safety precaution. When they arrived at the residence they saw a juvenile in the yard, estimated to be between about 10 and 12 years old. They asked him if this was Defendant's residence. The boy said he was Defendant's son, said his father was inside, and invited them in. Sgt. Dornburg testified

he wasn't sure of the boy's exact words, but he said, in effect, "My dad's inside, come on in." They knew from this statement that there was an adult inside. They did not knock. They found Defendant inside the residence and told him why they were there. They asked for his consent to search the residence, but he did not consent. Trooper Blake went to go obtain a search warrant. The others stayed with Defendant in the kitchen.

Trooper Blake testified he was not clandestine lab certified, but had some experience in the field with meth labs. Webster County was "very active" with meth labs. He investigated 6-10, and assisted with many more. Sgt. Dornburg told him about the anonymous tip, and he and the two other officers went to Defendant's residence. He believed, based on Defendant's criminal history he obtained prior to going, that it was a good idea to have several officers. Generally there would be at least two officers for safety reasons, in particular in a matter involving drugs. When the officers arrived they saw Defendant's juvenile son outside. The boy took them inside to see Defendant. The officers told Defendant they had received an anonymous tip regarding drug activity, and that he was possibly cooking meth at his place. They asked Defendant for his consent to search his residence. Defendant did not consent. They asked him what he was concerned about, to which he responded: "Two jars upstairs that may have been used for something." Tpr. Blake asked, "What do you think is in those jars?" Defendant replied, "That stuff that everybody's making." Tpr. Blake testified that that statement along with Defendant's prior history led him to believe the "stuff" was meth.

Webster County Magistrate Richard S. Robertson testified he was the magistrate who signed the original search warrant for Defendant's residence. He brought with him to the hearing a cassette tape recording of the proceeding on April 3, 2013, in which Trooper Blake applied for the search warrant. The proceeding took place in his courtroom in Webster County. He recalled the proceeding. He testified he had listened to the tape earlier this date and it was an accurate, in fact

"exact" recording of himself and Trooper Blake. The tape recording was admitted without objection. The tape recording was played in open court. In it, Magistrate Robertson first swears Trooper Blake. The Trooper swears everything contained in the complaint is true. Magistrate Robertson then asks the Trooper: "Ok, tell the Court what's going on here as to this search warrant application." Trooper Blake's testimony to the magistrate is as follows:

> Earlier today, on this date, Sgt. Dornburg received an anonymous tip phone call in our office that this individual, Ronnie Belt, he had, uh, there had been meth made at his residence a few weeks ago and he had the ingredients there to make it again today. We went to his residence, myself, Sgt. Dornburg, and Sr. Tpr. Baier, to his residence at 189 Maple Inn Road, attempting to obtain a search –a consent. We found him while we were there. He refused to sign the consent to search. We were talking with him. We asked him if there was anything in the residence that he would be worried about. He ultimately stated that there were two jars in his residence that they make that stuff with. I then asked him what stuff are you talking about? Are you talking about meth? And he nodded his head yes. We then sealed off the residence and applied for this search warrant.

Magistrate Robertson then asked Trooper Blake who was in the house, to which the trooper responded, "Ronnie Belt and his juvenile son." When asked the son's age, the Trooper said he did not know, but that he was under age 16, and Child Protective Services had been notified. The Trooper advised the events had all taken place in Webster County, and the magistrate found probable cause and issued the search warrant.

## V. Motion to Suppress

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) quoting United States v. United States District Court, 407 U.S. 297, 313, 92

S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence. See United States v. Murphy, 241 F.3d 447, 457 (6th Cir. 2001). Whether probable cause exists must be determined "under the totality of the circumstances." See Illinois v. Gates, 462 U.S. 213 (1983).

### a. The Entry into the Residence

During the hearing, it was disclosed that when the officers arrived at Defendant's residence for the "knock and talk," they encountered Defendant's 11-year-old son outside. The officers told him they were looking for Ronnie Belt, and the boy told them Belt was his dad, and he was inside. He then either admitted or invited the officers into the residence. There is no evidence or testimony that the police ever asked Defendant for consent to enter before they did so. There was no evidence or contention that Defendant asked the officers to leave or otherwise told them he objected to their being in his home. Defendant and the officers spoke, and there is no evidence or contention that the statements Defendant made to the officers was involuntary.

Defendant, through counsel, argues that the purported consent to enter the residence, given by an 11-year-old boy under these circumstances, was not voluntary. In addition, the police lacked a sound factual basis to rely on third-party consent, and it was unreasonable to rely on apparent

6

authority of a third party– here an 11-year-old boy. The entry into Defendant's home was therefore illegal, and all evidence seized thereafter should be suppressed.

The Fourth Amendment is not implicated when law enforcement officers approach a dwelling, knock on a door, and attempt to speak with the occupant. United States v. Cephas, 254 F.3d 488 (4th Cir. 2001)("an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry"); United States v. Taylor, 90 F.3d 903 (4th Cir. 1996). Further, anyone who "possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected" may consent to the search of another's property. United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L.Ed.2d 242 (1974). The undersigned was unable to find any Fourth Circuit case on point. The Sixth, Tenth, and Eleventh Circuits have, however, held that minors may give third-party consent to a search. See, e.g., United States v. Clutter, 914 F.2d 775 (6th Cir. 1990); Lenz v. Winburn, 51 F.3d 1540 (11th Cir. 1995); U.S. v. Sanchez, 608 F.3d 685 (10th Cir. 2010).

In Clutter, the Sixth Circuit decided that minors may give consent provided the minor otherwise satisfies the requirements of a third-party consenter. In that case, a police officer was admitted into a defendant's trailer by a co-defendant's 12- and 14-year-old sons, who also resided in the trailer. The officer found a large quantity of marijuana in the defendant's bedroom. The court held their consent sufficed to legitimate the search without addressing the boys' age.

In Lenz, the Eleventh Circuit first stated: "To our knowledge, no federal court of appeals has yet explicitly addressed the capacity of minors to give third-party consent. We hold that minors may so consent." The minor in Lenz was only 9 years old.

The undersigned finds it an important distinction that Defendant's son in this case was not consenting to a search. He simply invited or let the officers in the house, where his father was.

7

Defendant could simply have told the officers to leave. The officers did not detain Defendant when they entered, and there is no evidence they saw anything in plain view due to their entry into the house. There is no evidence or argument that Defendant's speaking with the officers was involuntary or coerced. This is further evidenced by the officers actually asking Defendant for his consent to search, which he refused, and the one officer then leaving to seek a search warrant.

Based on the above, the undersigned finds Defendant's son's consent for the officers to simply enter the home where his father was did not invalidate the later search warrant.

### b. The Search Warrant

Defendant argues the search was illegal in that: 1) the search warrant application failed to establish probable cause and 2) the good faith exception to the exclusionary rule does not apply as the affidavit in support of the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Once a search warrant has been issued, review of the probable cause determination by the judicial officer is to be shown "great deference." United States v. Blackwood, 913 F.2d 139 (4th Cir. 1990). "[T]he task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727 (1984). "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). Finally, "the validity of a search warrant obtained by state officers is to be tested by the requirements of the Fourth Amendment of the U.S. Constitution, not by state law standards, when the admissibility of evidence in federal court is at issue." United States v. Clyburn, 24 F.3d 613 (4th Cir. 1994)(upholding search warrant supported by affidavit and sworn, unrecorded oral

statements, rejecting defendant's Rule 41 and state law arguments to the contrary).

The Supreme Court has described "probable cause" to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213 (1983). However, "probable cause is a fluid concept - - turning on the assessment of probabilities in particular factual context - - not readily, or even usefully, reduced to a neat set of legal rules." <u>Id.</u> at 232. The probable cause standard does not:

> [R]equire officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause.

<u>Taylor v. Farmer,</u> 13 F.3d 117 (4th Cir. 1993). <u>Accord</u> <u>Ornelas v. United States</u>, 517 U.S. 690 (1996) (Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.")

The affidavit states only that there was an anonymous tip that Defendant was making meth, and that Defendant stated there were "two jars" that "may have been used for something" in the residence. The undersigned need not determine whether that meager information was enough to establish probable cause in this case, however. The Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by "oath or affirmation." <u>United States v. Clyburn</u>, 24 F.3d 613 (4th Cir. 1994)(upholding search warrant obtained by state officers supported by written affidavit and sworn, unrecorded statements). Here, Magistrate Robertson placed Trooper Blake under oath, and then not only asked if his affidavit was true, but also asked him to "tell the Court what's going on here as to this search warrant application." Trooper Blake then explained, under

oath, that when asked if there was something in the residence he was worried about, Defendant stated

"there were two jars in his residence that they make that stuff with." He then told the magistrate,

under oath, that he expressly asked Defendant if he was talking about meth, and that Defendant

nodded his head yes. Magistrate Robertson then found probable cause. Unlike in Clyburn, the entire

proceeding, including Trooper Blake's sworn testimony as well as the magistrate's finding of

probable cause, was recorded.

The undersigned finds there is substantial evidence in the record supporting Magistrate

Robertson's issuance of the search warrant.

### c. <u>Leon</u>

Should the District Court find that the information presented to Magistrate Robertson is

insufficient even under the totality of the circumstances, to support a probable cause determination,

the Government argues that the evidence seized in the second search should not be suppressed

pursuant to the "good faith exception" stated in <u>U.S. v. Leon</u>, 468 U.S. 897, 104 S. Ct. 3405, 82 L.

Ed. 677 (1984). Defendant argues that <u>Leon</u> does not apply because the affidavit was so lacking in

indicia of probable cause as to render official belief in its existence entirely unseasonable.

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth

Amendment rights generally through its deterrent effect, rather than a personal constitutional right

of the party aggrieved." <u>United States v. Calandra</u>, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561

(1974). In <u>Leon</u>, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to
> punish the errors of judges and magistrates. Second, there exists no evidence
> suggesting that judges and magistrates are inclined to ignore or subvert the Fourth
> Amendment or that lawlessness among these actors requires application of the
> extreme sanction of exclusion. Third, and most important, we discern no basis, and
> are offered none, for believing that exclusion of evidence seized pursuant to a

warrant will have a significant deterrent effect on the issuing judge or magistrate.

Leon at 915, 104 S. Ct. at 3417. Further:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

Id. at 918, 104 S. Ct. 3 at 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

Id. at 922, 104 S. Ct. at 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. at 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was

valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The evidence in this case, including the recording of the magistrate's questioning of Trooper Blake under oath, refutes any argument that Magistrate Robertson "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." U.S. v. Leon, 468 U.S. 897. That same evidence also refutes any argument that the magistrate was misled by information in the affidavit that Trooper Blake knew was false or would have known was false except for his reckless disregard of the truth.

The undersigned also finds the warrant was not so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid.

Defendant's argument is generally based on factor 3– that the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable. As already found, although the written affidavit was lacking, the sworn, recorded testimony of Trooper Blake to Magistrate Robertson is enough for a finding of probable cause. Even this were not the case, the evidence is clear that Trooper Blake's reliance on the search warrant signed by the magistrate was reasonable.

### d. Scope of Search

There is no contention that the officers exceeded the scope of the search and the undersigned finds they did not.

### e. Conclusion

For all the above reasons, the undersigned finds probable cause supports the issuance of the search warrant. Further, the officers' original entry into the residence at the invitation of or with the consent of Defendant's son does not invalidate the later warrant. Lastly, the officers' reliance on the search warrant issued by the magistrate was objectively reasonable. The good faith exception, therefore, renders the evidence seized in the search admissible, even if it were determined there was not probable cause to issue the search warrant.

### VI. Motion for <u>Franks</u> Hearing

Defendant also moves the Court, pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) to suppress evidence seized in this case due to alleged misrepresentations by Trooper Blake in his affidavit in support of the search warrant. Defendant contends that, prior to the issuance of the warrant, he "simply refused to consent to a search," and that it was "only after the police returned with a warrant that he said 'jars' that 'may have been used for something' might be located in the residence." He argues "[t]his was never stated before the warrant issued.

To be entitled to a hearing pursuant to <u>Franks</u>, a defendant must make a dual showing which

incorporates both the subjective and objective threshold components.  <u>United States v. Colkley</u>, 899 F.2d 297 (4th Cir. 1990).  First, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit.  Second, the offending information must be essential to the probable cause determination.

Defendant cannot get past the first, threshold showing in this case.  The evidence at the second hearing clearly shows the statement regarding "jars" which "may have been used for something" was made prior to Trooper Blake seeking the search warrant from the magistrate.

For all the above reasons, the undersigned United States Magistrate Judge finds that none of the evidence seized from the search of Defendant's residence  is excludable.

### <u>RECOMMENDATION</u>

For the reasons herein stated, it is **RECOMMENDED** that Defendants' Motion to Suppress Evidence [D.E. 18] and " Motion to Suppress Evidence Pursuant to <u>Franks v. Delaware</u>" [D.E. 19] both be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge.  Failure to timely file objections to the Report and Recommendation  set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>**,** 766 F.2d 841 (4th Cir. 1985); <u>Thomas</u>

v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to direct this Report and Recommendation to counsel of record.

Respectfully submitted this 8 day of November, 2013.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE