**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                 **CRIMINAL NO. 2:13-CR-30
(Judge Bailey)**

**RONNIE GERALD BELT,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO SUPPRESS

Pending before this Court is the Report and Recommendation/Opinion [Doc. 30] issued by Magistrate Judge John S. Kaull on November 8, 2013. This Court, having reviewed Defendant's Motion to Suppress Evidence [Doc. 18], Defendant's Motion to Suppress Evidence Pursuant to ***Franks v. Delaware*** [Doc. 19], the Government's Objections thereto [Docs. 22 & 23], Defendant's Supplemental Post-Hearing Motion to Suppress Evidence [Doc. 27], the Report and Recommendation/Opinion [Doc. 30], and Defendant's Objections to Report and Recommendation/Opinion [Doc. 31], does adopt the Report and Recommendation for the reasons that follow.

The motion to suppress stems from the execution of a search warrant at defendant Belt's property at 189 Maple Inn Road, Webster County, West Virginia on April 3, 2013. This Court will not further set out the facts, inasmuch as the facts are thoroughly set forth in the Report and Recommendation and are not contested.

1

**Defendant's Objections**

I.  Apparent Authority Consent to Enter Defendant's Residence

The Defendant objects to the legal conclusion that the defendant's eleven year-old son gave voluntary consent to the police to enter the defendant's residence. The defendant argues that the police lacked a sound factual basis to rely on third-party consent, and it was unreasonable to rely on apparent authority of a third-party when the son was only eleven years old. Therefore, the defendant argues that the entry into the defendant's residence was illegal, and all evidence seized thereafter should be suppressed.

All parties recognize that the Fourth Circuit has not decided this issue of a minor's authority to search. In ***United States v. Matlock***, 415 U.S. 164 (1974), the United States Supreme Court held that the authority which justifies the third-party consent rests upon the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-occupants has the right to permit the inspection in his or her own right and that the others have assumed the risk one of their number might permit the common area to be searched. In light of ***Matlock***, and the lack of authority in the Fourth Circuit, this Court is not prepared to adopt a per-se rule for Fourth Amendment purposes that a minor may or may not consent to a search of his or her home. Rather, this Court, like many jurisdictions, will apply the ***Matlock*** "common-authority" test, treating age as only one element in determining the scope of the minor's authority to consent and whether the minor's consent was knowing and voluntary. Other factors to consider for anyone consenting to a search include maturity, education, intelligence, and experience as well as the conditions under which the consent to search

was given such as the officers' conduct; the number of officers present; and the duration at the location, and time of encounter. See **United States v. Lattimore**, 87 F.3d 647, 650 (4th Cir. 1996). Additionally, courts look to whether, and to what extent, officers exhibited a show of force, including a display of weapons; whether the actions of the arresting officers can be classified as flagrant misconduct; whether the police threatened to obtain a search warrant if the consenting party did not acquiesce, or whether the police claimed a right to search; whether the consenting party knew that he could refuse to allow a search; and whether consent was first offered by the consenting party or was in response to police request. This Court will review the above by looking to the totality of the circumstances.[1]
**United States v. Mendenhall**, 466 U.S. 544, 557 (1980).

The testimony at the suppression hearing revealed that three officers arrived at the defendant's home to question him. When they arrived, they saw a juvenile in the yard, who Sgt. Dornburg testified was estimated to be between 10 and 12 years old. No allegations were made that the officers exhibited any force, displayed any weapons, exhibited flagrant misconduct, made any threats, claimed any right to search, or elicited consent to search the defendant's home. Rather, the testimony reveals that the juvenile said he was the defendant's son, said his father was inside, and invited the officers to enter. Nor was any noteworthy testimony given relating to the time or duration of the encounter.

Contrary to the defendant's arguments, it appears to this Court that the minor did

---

[1] The defendant's Objection states that the R&R "utterly fails to conduct a 'totality of the circumstances' approach." [Doc. 31 at ¶ 10]. While the R&R does not appear to have included the operative phrase "totality of the circumstances," this Court does read the analysis as having conducted such an approach. Nevertheless, this Court has conducted its own independent analysis looking to the totality of the circumstances.

have authority the to invite others into the home.  First, the minor, without solicitation, explicitly invited the officers inside.  Second, upon entry, the defendant gave absolutely no indication that the minor should not have allowed the officers inside, but rather engaged in a conversation with the officers.  Therefore, based on the totality of the circumstances, this Court finds that the defendant's eleven year-old minor son did knowingly and voluntarily give his consent.

The defendant also takes issue with three cases cited by the R&R which purport to give minors the authority to consent to a search of a parent's home:  ***United States v. Clutter***, 914 F.2d 775 (6th Cir. 1990), ***Lenz v. Winburn***, 51 F.3d 1540 (11th Cir. 1995), and ***United States v. Sanchez***, 608 F.3d 685 (10th Cir. 2010).  This Court agrees with the defendant that these cases are distinguishable, but for different, additional reasons.  The defendant attempts to distinguish these three cases because the consent given in those cases, while given by minors, was valid based on their status as victims working closely with law enforcement.  As such, the defendant argues that their apparent authority was based on these special relationships.

This Court finds the more important distinction is that the consent in this case given by the defendant's minor child was simply to enter the defendant's house, knowing the defendant was inside.  At least one Court has held there is no violation of a defendant's rights under the Fourth Amendment when a minor merely admits officers to the defendant's house to talk to the parent.  ***Davis v. United States***, 327 F.2d 301 (9th Cir. 1964), *overruled on other grounds*, ***United States v. Perea-Rey***, 690 F.3d 1179 (9th Cir. 2012).  Similarly, in this case, the police were invited into the home by the minor son and the police

4

questioned the defendant.

A search, as contemplated by the Fourth Amendment, occurs when an expectation of privacy that society is prepared to consider reasonable is infringed by Government action. ***United States v. Jocobsen***, 466 U.S. 109 (1984). To the extent that this entry can be construed as a "search," it proceeded no further. Certainly no ill-gotten fruits were seized from the entry into the house. In fact, the defendant was asked if he would consent to a search, which request was denied. It was not until the defendant was questioned and made the statements about the jars that officers decided to leave to apply for, and obtain a search warrant. Under these specific facts, this Court finds there existed no unconstitutional conduct to which Fourth Amendment considerations could attach.

Even if such a Fourth Amendment violation could be found in this case, it is well established that not all evidence discovered as a result of a Fourth Amendment violation is fruit of the poisonous tree. Evidence derived from an illegal search may be admissible depending upon "whether, granting establishment of the primary illegality the evidence to which the instant objection is made has been come at by exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint." ***Wong Sun v. United States***, 371 U.S. 471, 488 (1963). "Thus, where there is sufficient attenuation between the unlawful search and the acquisition of evidence, the 'taint' of that unlawful search is purged. To determine whether the derivative evidence has been purged of the taint of the unlawful search, we consider several factors, including: (1) the amount of time between the illegal action and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.

*Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)." *United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012).

There simply exists no factual nexus connecting any alleged constitutional violation; i.e., consent to enter defendant's house by his minor child, and the later lawful search of the defendant's home. Whether or not the minor child had actual or apparent authority to provide consent to enter the defendant's home, the chain of the discovery of any evidence obtained thereafter was broken by the statements defendant made which ultimately formed the basis for the search warrant. Thus, this Court finds the initial entry into the home to be far too attenuated to the ultimate discovery of the evidence the defendant seeks to suppress. Accordingly, the Objection is **OVERRULED**.

II.     Probable Cause

The defendant objects to the R&R's legal conclusion that there was probable cause to support the issuance of the search warrant. In support, the defendant argues that the police responded to the residence based only on an anonymous tip, and the police had nothing to rely upon except the vague responses of the defendant to police questioning and the affirmative nodding of his head.

The facts in support of the search warrant are as follows:

On April 3, 2013, Sgt. G.E. Dornburg and Troopers S. C. Baier and S. G. Blake of the WV State Police went to the residence of Ronnie Belt, which is described herein above, to speak with Ronnie Belt about an anonymous tip they had received that he was cooking methamphetamine in the residence. Upon speaking with Ronnie Belt the officers explained why they were there

and asked for consent to search the residence. Mr. Belt decline to give consent (con't on next page)

The officers asked Mr. Belt if there was something in the residence he was concerned about. Mr. Belt responded that there were two jars in the residence that "may have been used for something" and that the officers would need to obtain a search warrant. The officers sealed the residence and sought the search warrant.

Once a search warrant has been issued, review of the probable cause determination by the judicial officer is to be shown "great deference." ***United States v. Blackwood***, 913 F.2d 139 (4th Cir. 1990). This Court must only "determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." ***Massachusetts v. Upton***, 466 U.S. 727 (1984). Further, "[w]hen reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." ***United States v. Wilhelm***, 800 F.3d 116 (4th Cir. 1996). Finally, "the validity of a search warrant obtained by state officers is to be tested by the requirements of the Fourth Amendment of the U.S. Constitution, not by state law standards, when the admissibility of evidence in federal court is at issue." ***United States v. Clyburn***, 24 F.3d 613 (4th Cir. 1994).

"Probable cause" to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." ***Illinois v. Gates***, 462 U.S. 213 (1983). "Probable cause is a fluid concept – turning on the assessment of probabilities in particular factual context – not readily, or even usefully, reduced to a neat set of legal rules." ***Id***. at 232. The

7

probable cause standard does not:

> [R]equire officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause.

**Taylor v. Farmer**, 13 F.3d 117 (4th Cir. 1993).

In addition, the Fourth Amendment does not require that the basis for probable cause be established in a written affidavit, but rather requires the information provided to the magistrate judge be supported by "oath or affirmation." **Clyburn**, 24 F.3d 613. As laid out below, in a sworn, recorded statement Trooper Blake informed the magistrate that when he asked the defendant whether there was something in the residence, the defendant stated that "there were two jars in his residence that they make that stuff with." He told the magistrate that when expressly asked if the defendant was referring to meth, the defendant nodded in the affirmative. Based upon this admission, the magistrate found probable cause to issue the search warrant. This Court agrees with the R&R that the above establishes substantial evidence in the record to support the magistrate's issuance of the search warrant. Accordingly, the defendant's Objection is **OVERRULED**.

III.  *Leon* Good-faith Exception

The defendant also argues that the "bare-boned" nature of the information provided in support of the search warrant application undercuts reliance on the good-faith exception to the exclusionary rule announced in **United States v. Leon**, 468 U.S. 897 (1984).

8

With respect to this contention:

"[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness," *Illinois v. Gates*, 462 U.S. at 267 (WHITE, J., concurring in judgment), for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982). Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, cf. *Harlow v. Fitzgerald*, 457 U.S. 800, 815–819 (1982), and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

*United States v. Leon*, 468 U.S. 897, 922-23 (1984) (footnotes omitted).

In determining whether the *Leon* good faith exception applies, "it is proper to consider any contemporaneous oral statements to the magistrate in conjunction with the supporting affidavit in assessing the reasonableness of an officer's reliance on a warrant." *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994), citing *United States v. Edwards*, 798 F.2d 686, 698-92 (4th Cir. 1986). *See United States v. McKenzie-Gude*, __ F.3d __, 2011 WL 6276086 (4th Cir. December 16, 2011); *United States v. Doyle*, 650 F.3d 460, 471 (4th Cir. 2011); *United States v. Perez*, 393 F.3d 457, 462 (4th Cir. 2004). It is of no consequence for the good faith analysis that a portion of the information presented to the magistrate was unsworn. *See United States v. Mannion*, 54 Fed.Appx. 372, 375 (4th Cir.

2002) (unpublished).

The tape recording was played in open court. In it, Magistrate Robertson first swears Trooper Blake. The Trooper swears everything contained in the complaint is true. Magistrate Robertson then asks the Trooper: "Ok, tell the Court what's going on here as to this search warrant application." In considering the universe of the information presented to the magistrate, the magistrate was told by Trooper Blake as follows:

> Earlier today, on this date, Sgt. Domburg received an anonymous tip phone call in our office that this individual, Ronnie Belt, he had, uh, there had been meth made at his residence a few weeks ago and he had the ingredients there to make it again today. We went to his residence, myself, Sgt. Dornburg, and Sr. Tpr. Baier, to his residence at 189 Maple Inn Road, attempting to obtain a search – a consent. We found him while we were there. He refused to sign the consent to search. We were talking with him. We asked him if there was anything in the residence that he would be worried about. He ultimately stated that there were two jars in his residence that they make that stuff with. I then asked him what stuff are you talking about? Are you talking about meth? And he nodded his head yes. We then sealed off the residence and applied for this search warrant.

This information was sufficient to provide the officers with a reasonable belief as to the validity of the warrant.

The facts presented in this case are a far cry from the "bare bones" found in **United States v. Wilhelm**, 800 F.3d 116 (4th Cir. 1996). In **Wilhelm**, the warrant was "based

10

solely upon an anonymous phone caller's tip that the caller had recently observed marijuana sales in Wilhelm's residence. The officer did not learn the caller's name or any other identifying information, nor did he meet with the caller in person at any point. Nevertheless, the officer's affidavit described the anonymous caller as 'a reliable source who is a concerned citizen, a resident of Iredell County, a mature person with personal connections with the suspects and has projected a truthful[ ] demeanor to this applicant.'" *Id*.

In this case, the officers received an anonymous tip, but inquired further before attempting to acquire a warrant. They first decided to go to the defendant's residence to speak to him and to obtain his consent to search. The defendant did not consent to a search, and when questioned why a search concerned him, the defendant responded that "two jars upstairs may have been used for something," which "something" was believed to have been meth. Only then did Trooper Blake seek a search warrant from the magistrate.

One of the main purposes of the exclusionary rule is to deter unlawful police conduct. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence depends on whether suppression of the evidence would have the effect of deterring police misconduct. Typically, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter." **Leon**, at 920-21. Upon review of the above, this Court finds no such activities **Leon** seeks to deter. Accordingly, this Court hereby **OVERRULES** the defendant's Objection.

IV. **Franks** Hearing

Finally, the Court notes that the defendant has not lodged any objection to the magistrate judge's denial of a *Franks* hearing.[2] Having reviewed the R&R for clear error, this Court agrees with the magistrate judge's finding that the evidence at the second suppression hearing shows that the statement regarding the "jars" which "may have been used for something" was made prior to Trooper Blake seeking the search warrant from the magistrate judge. Accordingly, the defendant has failed to make a substantial showing that a false statement knowingly and intentionally, or with reckless disregard for the truth was included by the affiant in the warrant affidavit. *Franks*, 438 at 155-56.

**Conclusion**

For the reasons stated above, and for the reasons more fully stated by the magistrate judge, this Court hereby **ADOPTS** the Report and Recommendation **[Doc. 30]**. The defendant's Objections **[Doc. 31]** are **OVERRULED**. Accordingly, the Defendant's Motions to Suppress Evidence **[Docs. 18, 19 & 27]** are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit certified copies of this Order to all counsel of record.

**DATED**: December 20, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

[2] *See* ***Franks v. Delaware***, 438 U.S. 154 (1978).